Michael P. Pappas, Esq. (MP 6716)
MICHAEL P. PAPPAS LAW FIRM, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 770-7890

*Attorneys for Plaintiff*
  *Photon Interactive Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHOTON INTERACTIVE SERVICES INC.,

                        Plaintiff,                          Case No.

            -against-

                                                            **COMPLAINT**

SGII, INC. d/b/a SENEGENCE,
                                                            Jury Trial Demanded
                        Defendant.

---

        Plaintiff Photon Interactive Services Inc., as and for its complaint against Defendant

SGII, Inc. d/b/a SeneGence, hereby alleges:

        1.      This is a diversity action arising from Defendant's material breaches of

certain commercial contracts with Plaintiff, which breaches have damaged Plaintiff in the

amount of at least $516,381, plus interest, attorneys' fees, costs, and expenses.

                        **JURISDICTION AND VENUE**

        2.      This Court has subject matter jurisdiction over all of the claims in this action

pursuant to 28 U.S.C. § 1332 on the grounds of diversity of citizenship, because the

Plaintiff and Defendant are citizens of different states and the amount in controversy

exceeds $75,000. The parties also mutually consented to this Court's jurisdiction in a forum

selection clause set forth in their Master Services Agreement dated December 14, 2020.

3.      Venue is proper in this District because the parties mutually consented to venue in this Court in a forum selection clause set forth in their Master Services Agreement dated December 14, 2020.

## THE PARTIES

4.      Plaintiff Photon Interactive Services Inc. ("Plaintiff" or "Photon") is a Nevada corporation with its principal place of business at 4835 Lyndon B. Johnson Fwy, Suite 540 Dallas, TX 75244. Photon is a digital engineering company that provides digital solutions such as web platforms, mobile apps, cloud services, and middleware to businesses in the U.S. and abroad.

5.      Defendant SGII, Inc. d/b/a SeneGence ("Defendant" or "SeneGence") is a Delaware corporation with its principal place of business at 19651 Alter, Foothill Ranch, California 92610. SeneGence is a privately-owned American multi-level marketing company that sells skincare and makeup products.

## FACTS

### The Master Agreement

6.      In 2020, Photon and SeneGence discussed a business opportunity for SeneGence to engage Photon's services to develop and implement a unified digital sales and marketing platform.

7.      On or about December 14, 2020, Photon and SeneGence entered into a Master Professional Services Agreement (the "Master Agreement") to govern their relationship.

8.      The Master Agreement contemplated that the specific services to be performed by Photon under the Master Agreement, and the fees for such services, would

be set forth in a separate Statement of Work ("SOW"), which was defined as a "written description of the services and deliverables provided by Photon in a project under this Agreement from time to time."

9.      Section 2.2 of the Master Agreement provided: "Each Statement of Work shall be agreed upon by both parties, executed by authorized representatives of both parties and consecutively numbered. Each Statement of Work shall set forth, at a minimum, a description of the work to be performed; delivery schedule for performance and completion of the work, including milestone and delivery dates, where appropriate; amount, schedule, and method of payment of compensation; completion, change and acceptance criteria, if applicable; designation of the names and addresses of the project coordinators of each party and other billing terms specific to the work in question."

10.     Sections 3.1 and 3.3 of the Master Agreement provided, in relevant part: "Customer agrees to pay the amounts set forth in the applicable and mutually agreed upon Statement of Work for the Services and Deliverables covered by such Statement of Work…. Payment terms are net Fifteen (15) days from the date of invoice…. All overdue amounts shall bear interest at the rate of 1.5% per month, or the highest rate permitted by applicable law, whichever is less, until paid in full. Interest shall accrue on a daily basis."

11.     Section 7.1 of the Master Agreement provided, in relevant part: "[T]his Agreement may be terminated at any time by Customer upon 24 hours' notice to Photon. In the event of such termination, Customer shall only be liable to Photon for services performed through the termination date."

12.     Section 9 of the Master Agreement provided: "In any litigation, arbitration or other proceeding by which a party seeks to enforce its rights under this Agreement

(whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded reasonable attorneys' fees, together with any reasonable costs and expenses, incurred to resolve the dispute and to enforce the final judgment."

13.     Section 10.1 of the Master Agreement provided: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York. Any action or proceeding arising from or relating to this Agreement shall be brought in the federal courts of the State of New York. Each party hereby irrevocably consents to the exclusive jurisdiction and venue of such courts."

14.     Section 10.5 of the Master Agreement provided: "No delay or failure by either party to exercise or enforce at any time any right or provision of this Agreement shall be considered a waiver thereof or of such party's right thereafter to exercise or enforce each and every right and provision of this Agreement. A waiver to be valid must be in writing."

<u>Amendments to the Master Agreement</u>

15.     On or about June 29, 2021, the parties entered into an Amendment to the Master Agreement ("Amendment No. 1"), which provided, in relevant part: "This Master Professional Services Agreement shall apply to all Statements of Work entered into by the parties, unless otherwise agreed to in a signed writing by the parties."

16.     On or about January 27, 2023, the parties entered into an Amendment to the Master Agreement ("Amendment No. 2"), which provided, in relevant part:

        (a)     "Except as specifically set forth below, payment terms are net thirty (30) days from date of invoice…."

4

(b)      "Notwithstanding [the] above, the payment terms [for the] work and services performed by Photon pursuant to SOW #1 (Fixed Velocity Engagement, dated 1/27/23); from July 1, 2023 through Dec. 31, 2023, shall be net sixty (60). Said payment terms shall revert to net thirty (30) on Jan. 1, 2024."

(c)      "Notwithstanding [the] above, payment for the work and services performed by Photon pursuant to SOW #1 (Fixed Velocity Engagement, dated 1/27/23); from Jan 27, 2023 through June 1, 2023, shall be paid pursuant to Exhibit B to SOW #2."

<u>The Statements of Work, Addenda, and Amendments</u>

17.      On or about December 21, 2020, Photon and SeneGence entered into the first Statement of Work under the Master Agreement, entitled "Unified Platform Roadmap Development" (the "Roadmap SOW").

18.      The Roadmap SOW was "entered into pursuant to [the Master Agreement]," "incorporate[d] the terms and conditions of the [Master] Agreement by reference," and provided that "All work performed hereunder shall be subject to the terms of the [Master Agreement]."

19.      The Roadmap SOW provided for a "fixed bid" fee structure, in which Photon agreed that the "overall cost for all services under this SOW is USD $200,000," with $150,000 payable at project initiation and the remaining $50,000 payable upon acceptance of deliverables.

20.      Section 6.2(7) of the Roadmap SOW provided: "If at any point in time, this project is cancelled, the Client agrees to pay Photon for all work done through the effective date of termination on a pro-rated basis in accordance with the terms of the Agreement."

21.     Section 6.2(9) of the Roadmap SOW provided, in relevant part: "Any material changes in the SOW … shall be chargeable at the hourly rate set forth in the rate card, upon prior written notice to Client and written acceptance of such charges. If any of the assumptions set forth herein are not true, Photon will be entitled to price increases hereunder to compensate for the additional costs associated therewith…."

22.     On or about March 30, 2021, the parties entered into an addendum to the Roadmap SOW ("Addendum 1") for certain additional work, at a cost of $46,800. In Addendum 1, Photon agreed to provide SeneGence with a 50% co-investment (*i.e.*, a discount of $23,400), on the condition that SeneGence select Photon as its partner for the Implementation Phase of the project.

23.     On or about June 28, 2021, after Photon successfully completed its work under the Roadmap SOW, the parties entered into another Statement of Work under the Master Agreement for unified digital platform implementation (the "Digital Platform SOW").

24.     The Digital Platform SOW was "entered into pursuant to [the Master Agreement]," "incorporate[d] the terms and conditions of the [Master] Agreement by reference," and provided that "All work performed hereunder shall be subject to the terms of the [Master Agreement]."

25.     The Digital Platform SOW provided for a "fixed bid" implementation, in which Photon agreed to "perform the services set forth in this SOW, subject to the assumptions set forth herein for a fixed price of $1,600,000." The fixed amount of $1,600,000 was to be payable in 10 installments of varying size, which SeneGence was to

pay Photon on certain dates over the following 12 months. The last 8 of the payments were conditioned on the completion of certain project milestones.

26.    Section 5.2(h) of the Digital Platform SOW provided: "If at any point in time, this project is cancelled, the Client agrees to pay Photon for all work done through the effective date of termination (including any contractual notice period to be considered as per the MSA or this SOW) on a pro-rated basis in accordance with the invoice raised by Photon."

27.    Section 5.2(k) of the Digital Platform SOW provided, in relevant part: "Any changes in the SOW … shall be chargeable at the hourly rate set forth in the rate card, or as otherwise mutually agreed upon by the parties. If any of the assumptions set forth herein are not materially true, Photon will be entitled to price increases hereunder to compensate for the additional costs associated therewith."

28.    Section 9 of the Digital Platform SOW provided: "All invoices raised by Photon as per the payment schedule mentioned in this agreement shall be either accepted by the Client within five (5) business days upon receipt of the invoices or the Client shall provide full justification and clarification of path to acceptance."

29.    Section 9 of the Digital Platform SOW further provided: "Payment terms are net fifteen (15) days from date of invoice except the initiation invoice that will need to be paid in advance. All overdue amounts shall bear interest at the rate of 1.5% per month, or the highest rate permitted by applicable law, whichever is less, until paid in full. Interest shall accrue on a daily basis."

30.    On or about April 19, 2022, SeneGence requested certain changes in the Digital Platform SOW, which were memorialized in a written Change Request. The

Change Request provided that certain items would be removed from the scope of work set forth in the Digital Platform SOW, and that other items would be added. The result of these changes was a net cost increase of $303,000. In addition, the payment schedule and milestones set forth in the Digital Platform SOW were revised to reflect an adjusted payment and performance schedule for the remaining work to be performed by Photon.

31.    In or about January 2023, SeneGence asked to terminate the Digital Platform SOW and switch to a new arrangement where it would be required to pay Photon on a "time and materials" basis rather than a flat fee basis, *i.e.*, SeneGence would only have to pay Photon on an hourly rate basis for services actually provided.

32.    At that time, the Digital Platform SOW had not yet been completed, and SeneGence still owed Photon monies for services performed under the Digital Platform SOW. Specifically, SeneGence still owed Photon a total of at least $297,960 in fixed payments.

33.    On or about January 27, 2023, the parties agreed to amend the Digital Platform SOW providing for additional changes in the scope of work, specifically an 11-week extension caused by SeneGence's inability to meeting its requirements under the Digital Platform SOW, which resulted in an increase in actual cost of $553,000. The agreed amendment also described the breakdown of the $297,960 owed by SeneGence to Photon. Photon agreed to discount the cost increase from $553,000 to $275,000 (a discount of $278,000), as long as Photon remained SeneGence's vendor through the completion of the project and all amounts under the January 27, 2023 amendment were paid.

34.    The January 27, 2023 Amendment to the Digital Platform SOW also provided that the Digital Platform SOW would (per SeneGence's request) terminate

effective January 27, 2023, and that any "further work will be executed in a new SOW which will be mutually agreed by both parties."

35. The January 27, 2023 Amendment to the Digital Platform SOW expressly stated that SeneGence would owe Photon remaining fees of $105,000 upon termination of the Digital Platform SOW.

36. After January 27, 2023, SeneGence paid Photon $192,960 of the amounts owed as described in the amendment to the Digital Platform SOW, but it did not pay the remaining $105,000.

37. On or about September 5, 2023, after several months of negotiation, Photon and SeneGence entered into a new SOW entitled "SAFe (Scaled Agile Framework) & Fixed Velocity Engagement Model Proposal Statement of Work" (the "Fixed Velocity SOW"), which was made retroactive to January 27, 2023.

38. The Fixed Velocity SOW was "entered into pursuant to [the Master Agreement]," "incorporate[d] the terms and conditions of the [Master] Agreement by reference," and provided that "All work performed hereunder shall be subject to the terms of the [Master Agreement]."

39. Section 4(a)(3) of the Fixed Velocity SOW provided, in relevant part: "[T]he client can unilaterally terminate or cancel this SOW, without the prior written consent of Photon, pursuant to Section 7.1 of the [Master Agreement], with at least thirty (30) days' prior written notice."

40. Section 4(a)(8) of the Fixed Velocity SOW provided: "In any litigation, arbitration or other proceeding by which a party seeks to enforce its rights under this SOW (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under

this SOW, the prevailing party shall be awarded reasonable attorneys' fees, together with any reasonable costs and expenses, incurred to resolve the dispute and to enforce the final judgment."

41.     In Section 5 of the Fixed Velocity SOW, SeneGence agreed to pay Photon on an hourly rate basis for all work performed, in accordance with the rate chart specified therein. Section 5 further provided: (i) that "Photon shall invoice the client at the end of every month based on the actual hours consumed by the resources and Payment terms per the [Master Agreement]," and (ii) that payment for the work and services performed by Photon from January 27, 2023 through June 30, 2023 (which SeneGence still owed and totaled $513,273) would be paid in weekly installments of $20,000 pursuant to an attached Payment Plan Agreement.

### SeneGence Terminates its Agreements with Photon

42.     On or about June 3, 2024, SeneGence provided Photon with 30 days' written notice that it was terminating the Master Agreement and the Fixed Velocity SOW. SeneGence's notice of termination did not assert that Photon had breached (materially or otherwise) any of its agreements with SeneGence or otherwise failed to perform its obligations under those agreements.

### SeneGence Breaches its Agreements with Photon by Failing to Pay Amounts Due

43.     On June 12, 2024, Photon invoiced SeneGence for work performed under the Fixed Velocity SOW in May 2024 (before the effective date of SeneGence's termination of its agreements with Photon), in the amount of $57,438.

44.     Photon fully and satisfactorily performed the work for which it invoiced SeneGence on June 12, 2024.

45.     Pursuant Section 3.3 of the Master Agreement (as amended), SeneGence was required to pay the June 12, 2024 invoice in full "net thirty (30) days from date of invoice," *i.e.*, no later than July 12, 2024.

46.     Despite due demand from Photon, SeneGence has, to date, failed and refused to pay Photon any portion of the June 12, 2024 invoice.

47.     SeneGence has not disputed, and would have no good faith basis to dispute, Photon's June 12, 2024 invoice.

48.     As a result of SeneGence's breach of its contractual obligation to pay the June 12, 2024 invoice, SeneGence is liable to Photon in the amount of $57,438, plus interest at the rate of 1.5% per month accrued on a daily basis.

49.     On July 9, 2024, Photon invoiced SeneGence for work performed under the Fixed Velocity SOW in June 2024 (before the effective date of SeneGence's termination of its agreements with Photon), in the amount of $52,543.

50.     Photon fully and satisfactorily performed the work for which it invoiced SeneGence on July 9, 2024.

51.     Pursuant Section 3.3 of the Master Agreement (as amended), SeneGence was required to pay the July 9, 2024 invoice in full "net thirty (30) days from date of invoice," *i.e.*, no later than August 8, 2024.

52.     Despite due demand from Photon, SeneGence has, to date, failed and refused to pay Photon any portion of the July 9, 2024 invoice.

53.     SeneGence has not disputed, and would have no good faith basis to dispute, Photon's July 9, 2024 invoice.

54.    As a result of SeneGence's breach of its contractual obligation to pay the July 9, 2024 invoice, SeneGence is liable to Photon in the amount of $52,543, plus interest at the rate of 1.5% per month accrued on a daily basis.

55.    Under the terms of the Digital Platform SOW, SeneGence agreed to pay Photon certain fixed payments for work performed thereunder.

56.    At the time the Digital Platform SOW was terminated at SeneGence's request, SeneGence owed Photon the net amount of $105,000 for work performed under the Digital Platform SOW.

57.    On February 28, 2023, Photon informed SeneGence in writing via email that SeneGence owed Photon $105,000 for work performed under the Digital Platform SOW.

58.    Photon fully and satisfactorily performed the work for which it demanded the $105,000 payment from SeneGence.

59.    Despite due demand from Photon, SeneGence has, to date, failed and refused to pay Photon any portion of the $105,000 it still owes under the Digital Platform SOW.

60.    Photon never waived its right to payment of the $105,000 from SeneGence, and its forbearance in seeking to collect payment previously did not constitute a waiver of its right to payment, as expressly stated in Section 10.5 of the Master Agreement: "No delay or failure by either party to exercise or enforce at any time any right or provision of this Agreement shall be considered a waiver thereof or of such party's right thereafter to exercise or enforce each and every right and provision of this Agreement. A waiver to be valid must be in writing."

61.     As a result of SeneGence's breach of its contractual obligation to pay the remaining balance of $105,000 under the Digital Platform SOW, SeneGence is liable to Photon in the amount of $105,000, plus interest at the rate of 1.5% per month accrued on a daily basis.

62.     Under the terms of Addendum 1 to the Roadmap SOW, Photon provided SeneGence with a discount in the amount of $23,400 for serviced performed thereunder. The discount was conditioned on SeneGence partnering with Photon on the Implementation Phase of the project.

63.     Photon fully and satisfactorily performed the work for which it provided the conditional $23,400 discount to SeneGence.

64.     SeneGence terminated its relationship with Photon effective July 3, 2024, by way of written notice delivered on June 3, 2024. The termination became effective before the Implementation Phase of the engagement was completed.

65.     Because SeneGence did not adhere to its promise to partner with Photon through the Implementation Phase, the express condition for the $23,400 discount did not occur, and SeneGence thereby forfeited the discount.

66.     Despite due demand from Photon, SeneGence has, to date, failed and refused to pay Photon any portion of the $23,400 it now owes Photon under Addendum 1 to the Roadmap SOW by virtue of SeneGence's failure to satisfy the conditions of the discount.

67.     As a result of SeneGence's breach of its contractual obligation to pay the balance of $23,400 under Addendum 1 to the Roadmap SOW, SeneGence is liable to

Photon in the amount of $23,400, plus interest at the rate of 1.5% per month accrued on a daily basis.

68.     Photon provided SeneGence with another substantial discount of $278,000 under the January 27, 2023 Amendment to the Digital Platform SOW, which, pursuant to the parties' agreement and understanding, was conditioned on Photon completing its full engagement without termination by SeneGence and SeneGence fulfilling all of its payment obligations under that amendment.

69.     Photon fully and satisfactorily performed the work for which it provided the aforesaid conditional discount to SeneGence.

70.     SeneGence terminated its relationship with Photon effective July 3, 2024, by way of written notice delivered on June 3, 2024. The termination became effective before Photon's engagement was completed. Therefore, the condition for the $278,000 discount did not occur, and SeneGence thereby forfeited the discount. SeneGence also forfeited the discount by its continuing failure to pay $105,000 owed under that amendment.

71.     Despite due demand from Photon, SeneGence has, to date, failed and refused to pay Photon any portion of the $278,000 it now owes Photon under the parties' agreement for the provision of the conditional discount.

72.     As a result of SeneGence's breach of its contractual obligation to pay the balance of $278,000 for the forfeited discount, SeneGence is liable to Photon in the amount of $278,000, plus interest at the rate of 1.5% per month accrued on a daily basis.

73. Under Section 9 of the Master Agreement and Section 4(a)(8) of the Fixed Velocity SOW, SeneGence is also liable to Photon for Photon's reasonable attorneys' fees, costs, and expenses incurred in this action with respect to all of the above breaches.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

74. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 73 of the Complaint as if fully set forth at length herein.

75. The Parties entered into valid and binding written contracts that were supported by adequate consideration, *i.e.*, the Master Agreement, the Roadmap SOW and Addendum 1, the Digital Platform SOW (as amended), and the Fixed Velocity SOW (collectively, the "Contracts").

76. Plaintiff fully performed its obligations under the Contracts.

77. By the aforesaid conduct, Defendant breached the Contracts.

78. As a consequence of Defendant's aforesaid breaches, Plaintiff has been injured in the total amount of $516,381 or such greater amount as the proof at trial shall warrant, plus interest, reasonable attorney' fees, costs, and expenses.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

79. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 78 of the Complaint as if fully set forth at length herein.

80. There is implied in every contract a covenant of good faith and fair dealing, which is necessary to enable a party to receive the benefits promised for performance.

81. By the aforesaid conduct, Defendant violated the implied covenant of good faith and fair dealing in its Contracts with Plaintiff by depriving Plaintiff of fees and

compensation for its services without a good faith basis for doing so, thereby denying Plaintiff the benefits it was promised for fully performing its obligations under the Contracts.

82.    As a consequence of Defendant's aforesaid violation of the implied covenant of good faith and fair dealing, Plaintiff has been injured in the total amount of $516,381 or such greater amount as the proof at trial shall warrant, plus interest, reasonable attorney' fees, costs, and expenses.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment)

83.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 82 of the Complaint as if fully set forth at length herein.

84.    Alternatively, even if no enforceable contract existed between Plaintiff and Defendant, Defendant was nevertheless unjustly enriched at Plaintiff's expense.

85.    Plaintiff conferred a benefit upon Defendant with the expectation of earning fees. Specifically, Plaintiff, with the expenditure of a great amount of time and effort, provided services worth several hundred thousand dollars to Defendant.

86.    Although Plaintiff should have received at least $516,381 in fees as a result of its efforts, Defendant retained those monies for itself and did not pay any portion to Plaintiff. Plaintiff was thereby deprived of $516,381, which was kept by Defendant.

87.    Because Plaintiff performed services for Defendant with the expectation and understanding that it would be fully compensated for its work in the form of fees, Defendant's actions resulted in Plaintiff performing the work for much lower compensation than it was promised and that was agreed upon by Defendant. Thus, equity and good conscience require that Plaintiff receive restitution from Defendant.

88.    As a consequence of Defendant's aforesaid actions, it has been unjustly enriched at Plaintiff's expense, and Plaintiff is entitled to recover from Defendant all damages and remedies provided for by law, including, *inter alia*, at least $516,381 in damages for unpaid fees (or such greater amount as the proof at trial shall warrant), plus interest, reasonable attorneys' fees, costs, and expenses.

### FOURTH CAUSE OF ACTION
**(Quantum Meruit)**

89.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 86 of the Complaint as if fully set forth at length herein.

90.    Alternatively, even if no enforceable contract existed between Plaintiff and Defendant, Plaintiff is nevertheless entitled to its fees under the doctrine of quantum meruit.

91.    Plaintiff performed services for Defendant in good faith -- namely, the services set forth in the Contracts, which services were worth several hundred thousand dollars to Defendant.

92.    Defendant accepted the benefits of Plaintiff's performance of those services, and as a result obtained several hundred thousand dollars worth of Plaintiff's services.

93.    Plaintiff had a reasonable expectation of being fully paid its fees for its services based on Defendant's representations that it would pay Plaintiff the full amount of its fees in exchange for the services. Plaintiff would never have agreed to take on such significant work without being paid for it.

94.    The reasonable value of the services for which Plaintiff was not paid was agreed by Defendant to be at least $516,381.

95.     Defendant deprived Plaintiff of the reasonable value of its services by failing and refusing to pay Plaintiff the full amount of its fees.

96.     As a consequence of Defendant's aforesaid actions, Defendant has accepted benefits from Plaintiff without paying the reasonable value of Plaintiff's services, and Plaintiff is entitled to recover from Defendant all damages and remedies provided for by law, including, *inter alia*, at least $516,381 in damages for unpaid fees (or such greater amount as the proof at trial shall warrant), plus interest, reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

(1)     On the FIRST CAUSE OF ACTION awarding Plaintiff at least $516,381.00 in damages resulting from Defendant's breaches of contract (or such greater amount as the proof at trial shall warrant), plus attorneys' fees, costs, and interest;

(2)     On the SECOND CAUSE OF ACTION awarding Plaintiff at least $516,381.00 in damages for Defendant's breaches of the implied covenant of good faith and fair dealing (or such greater amount as the proof at trial shall warrant), plus interest, costs, and reasonable attorneys' fees;

(3)     On the THIRD CAUSE OF ACTION awarding Plaintiff at least $516,381.00 in damages for unpaid fees (or such greater amount as the proof at trial shall warrant), plus interest, costs, and reasonable attorneys' fees;

(4)    On the FOURTH CAUSE OF ACTION awarding Plaintiff at least $516,381.00 in damages for unpaid fees (or such greater amount as the proof at trial shall warrant), plus interest, costs, and reasonable attorneys' fees;

(5)    AS TO ALL CAUSES OF ACTION awarding Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees; and

(6)    Granting Plaintiff such other and further relief as the Court may deem just, equitable, and proper.

Dated: New York, New York
        September 19, 2024                    MICHAEL P. PAPPAS LAW FIRM, P.C.


                                    By:    _____*Michael P. Pappas, Esq.*_____
                                           Michael P. Pappas, Esq. (MP 6716)
                                           3 Columbus Circle, 15th Floor
                                           New York, New York 10019
                                           T: (646) 770-7890
                                           F: (646) 417-6688

                                           Email: michael@pappaslawfirm.com

                                           *Attorneys for Plaintiff*
                                            *Photon Interactive Services Inc.*